UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-10024-CR-KING/BANDSTRA

UNITED STATES OF AMERICA,

       Plaintiff,

vs.

MISAEL VELAZQUEZ MOLINA and
DUNIESKY LAU SOSA,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant's [Duniesky Lau Sosa's] Motion to Dismiss Indictment Due to Pre-Indictment Delay or Alternatively to Compel the Government to Produce Witnesses (D.E. 28) filed on June 2, 2008.[1] On June 5, 2008, this motion was referred to the undersigned for all permissible proceedings by the Honorable James Lawrence King pursuant to 28 U.S.C. §636(b).  Accordingly, the undersigned conducted a hearing on this motion on July 2, 2008.  Following careful review of the pleadings, the Court file and applicable law, and in consideration of oral argument of counsel, the undersigned recommends that defendant's Motion to Dismiss the Indictment

---

[1]On June 11, 2008, co-defendant Mishael Velazquez Molina moved to adopt this motion and to be present at all hearings on the matter.  The undersigned finds that both defendants have identical standing to raise the issues addressed herein so that the Court should grant Molina's Motion to Adopt this Motion to Dismiss.

Due to Pre-Indictment Delay be DENIED.

## BACKGROUND INFORMATION[2]

On or about September 11, 2007, defendants, Mishael Velazquez Molina and Duniesky Lau Sosa, together with twenty-four Cuban Nationals (hereinafter "migrants" or "aliens") were observed by the United States Coast Guard aboard a "go fast" vessel being operated by defendants in international waters near Key West, Florida. Following a short pursuit, coast guard officers aboard the USCG Cutter Sawfish stopped defendants' vessel and thereafter transferred defendants and the Cuban aliens on to their cutter and initiated an investigation.     Defendants Molina and Sosa produced identification documents from which it was learned that they had both entered the United States as parolees in May, 2007. The coast guard officers contacted the United States Immigration and Customs Enforcement ("ICE") and then transferred defendants to a detention center in Monroe County, Florida. Meanwhile, the twenty-four undocumented Cuban aliens were identified and subsequently returned to Cuba pursuant to United States policy.[3]

On April 28, 2008, defendants were indicted in this district and charged with one count of conspiracy to commit alien smuggling and twenty-four substantive counts of alien

---

[2]This background information, relevant to the Motion to Dismiss, is taken from the pleadings, the Court file and statements of counsel at the hearing on this motion to dismiss. This background information is initially undisputed by the parties.

[3]AUSA Ben Daniels explained at the hearing that pursuant to the Cuban Adjustment Act and the "Wet Foot Dry Foot" policy of the United States, undocumented Cuban aliens entered at sea enroute to the United States are routinely returned to Cuba if they have not reached this country's shores.

smuggling in violation of 8 U.S.C. §1324 (a)(1)(A)(iv) and (v)(I). This indictment was returned approximately eight months after the alleged criminal acts at sea, and after the twenty-four Cuban aliens had been returned to Cuba by United States authority.

On May 13, 2008, the United States provided certain discovery to defendants pursuant to the Standing Discovery Order previously entered in this case. Included in that discovery was a radio communications log of transmissions by the United States Coast Guard Cutter which interdicted defendants' vessel and which contained the following entry:

Stated the departed Villa Clara this morning at 0300. Stated the migrants departed on a chug and were picked up by the go fast after their vsl started taking on water.

See Attachment A to this Report and Recommendation.

On June 2, 2008, defendant Sosa filed the instant motion to dismiss.

## ANALYSIS

### A. Motion to Dismiss

Defendants move to dismiss the indictment due to pre-indictment delay pursuant to the due process clause of the Fifth Amendment to the United States Constitution. In brief summary, defendants contend that the criminal acts alleged in the indictment occurred on September 11, 2007, but that the government "delayed" the filing of the indictment for over eight months until after the Cuban aliens identified by name in the indictment had been repatriated to Cuba. Defendants argue that recent discovery provided by the government reveals that one or more of the Cuban aliens aboard their vessel had stated that they were picked up at sea by defendants after their vessel had

3

started taking on water.  Defendant contend that such statements by the Cuban aliens are "clearly favorable to defendants on the issue of guilt and, as such, are *Brady* material under *Brady v. Maryland*, 373 U.S. 83 (1963).   Defendants then argue that the government's "delay" in indicting them until after the Cuban aliens were repatriated to Cuba has resulted in prejudice to their defense; and that this delay was deliberate by the government to gain a tactical advantage in this case.

The parties agree that a defendants' assertion of pre-indictment delay must be analyzed under the due process clause of the Fifth Amendment.  *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 872 (1982); *United States v. McDonald*, 456 U.S. 1 (1982).  To establish a due process violation based on pre-indictment delay, a defendant must show that the reason for the delay "violates our fundamental concepts or conceptions of justice." *United States v. Hayes*, 40 F.3d 362, 365 (11th Cir. 1994) (quoting *United States v. Lovasco*, 431 U.S. 783, 790-91 (1977)).  In this circuit, the defendant must show that he suffered substantial prejudice as a result of the delay, and that the delay was the "product of deliberate action by the Government to gain a tactical advantage." *Id. citing United States v. Young*, 906 F.2d 615, 620 (11th Cir. 1990)).  In addition, the loss of potentially useful evidence by actions of the government, does not constitute a denial of due process unless the defendant can show that the government acted in bad faith. *United States v. Brown*, 9 F.3d 907, 910 (11th Cir. 1993) (*citing Arizona v. Youngblood*, 488 U.S. 51, 58 (1999)).

4

### 1.  No Prejudice

Here, defendants argue that they were substantially prejudiced by the government's delay in indicting them for over eight months after their alleged criminal activities because, in the meantime, the government repatriated the Cuban aliens aboard their vessel thereby preventing defendants from obtaining potentially exculpatory testimony at trial.  Defendants rely heavily on the coast guard communications log which noted only that certain "migrants" stated that they were "picked up by the go fast after their [vessel] started taking on water."  Defendants argue that such information, if obtained as testimony from one or more aliens at trial, would be relevant and material to their defense, namely, that they merely rescued the subject aliens at sea after their vessel was taking on water.

Reviewing the subject statement from the communications log and relevant law, the undersigned finds that defendants have not established actual or substantial prejudice here.  First, and most importantly, the subject statement from the communications log merely reports that some unidentified "migrants" were picked up by defendants' vessel after their own vessel was taking on water.  Assuming the admissibility of such testimony at trial,[4] the undersigned finds that this same communication log does not establish which

---

[4]The Government argues that such testimony would not be relevant or admissible because it would not bear on defendants' intent to smuggle the aliens into the United States.  Essentially, the government argues that it is irrelevant whether the vessel in which the aliens were first located was "taking on water" when confronted by defendants and would not establish a "rescue at sea" as alleged in this motion.  The undersigned does not attempt to determine the admissibility of such testimony, were it available to defendants, in the absence of the context in which such evidence would be offered at trial.

migrant(s) made the subject statement, whether their vessel was actually sinking or unable to cooperate, or whether defendants "rescued" them at all apart from the alleged scheme to smuggle the Cuban aliens into the United States.  In a similar case tried by this Court, the Eleventh Circuit held that to prove a violation of defendant's constitutional rights resulting from the Government's deportation of a witness, a defendant "must show some reasonable basis to believe that the deported witness would testify to material and favorable facts." *United States v. Saintil*, 753 F.2d 984, 987 (11th Cir. 1985) (*quoting United States v. Schaefer*, 709 F.2d 1383, 1386 (11th Cir. 1983)).  Here, defendants have not satisfied this burden merely by submitting the above-discussed communications log information.  At most, defendants have shown only that at least one Cuban alien reported water in their boat when picked up by defendants' vessel.  Without more, defendants fail to establish any prejudice by the absence of this testimony, even if available, at trial. [5]

### 2. No Bad Faith

Defendants also fail to establish no bad faith or deliberate design by the government to gain a tactical advantage by "delaying" the indictment in this case.  Defendants, in attempting to show bad faith, argue that the government intentionally waited to bring criminal charges against them to allow time for the government to repatriate the Cuban aliens in order to prevent any request by defense counsel to interview or obtain discovery from these potential witnesses.  Defendants note that at least one defense

---

[5]The government has agreed to stipulate to the statement in the communications log.  Defendants presently refuse this offer insisting on their right to the dismissal of the indictment due to the absence of these potential witnesses at this time and other favorable testimony that they might offer the defense.

6

attorney, APD Stewart Abrams, in cases indicted in 2004, had successfully filed emergency motions to preserve evidence and testimony which resulted in interviews with potential witnesses prior to repatriation to Cuba. Since then, defendants contend, the government has elected to delay the filing of criminal charges in these types of cases to prevent such discovery.

The government denies any such tactical intent. Rather, the government notes the need in this case to investigate defendants' particular immigration situations as recent parolees into the United States and other matters relevant to a decision to prosecute. The Government also notes the recent increase in alien smuggling involving Cuban Nationals; and the impossibility of allowing such aliens to enter the United States under the "Wet Foot Dry Foot" policy of the United States.

Reviewing these arguments and the absence of any actual evidence of bad faith by the government, the undersigned finds that defendants have failed to establish this second prong for dismissal based on pre-indictment delay. Defendants argument, based on prior cases in 2004 and subsequent "delay" in indicting defendants in these types of cases, is far too speculative and totally lacking in any real proof of any intentional design by the government to obtain a tactical advantage in these types of cases. The Supreme Court has long ago noted the government's dual and often conflicting obligations to promptly repatriate undocumented aliens to their native countries; and to prosecute those responsible for this type of crime. See Vilenzuela-Bernal, supra at 864-65. The government correctly argues the unique situation involving undocumented Cuban aliens who, under present policy, are permitted to remain in the United States if they reach its

7

shores.  Given these circumstances, without more from defendants, the undersigned finds no evidence of bad faith by the government occasioned by the eight month period of time between apprehension and prosecution.

### 3.  Motion to Compel Production of Witnesses

Alternatively, defendants argue, in the absence of dismissal, that the government shall be obligated to identify, locate and produce the repatriated Cuban aliens for interviews and possible preservation of testimony by defense counsel.  Defendants cite no authority for such requested relief other than the same arguments made for dismissal of the indictment.  Finding no basis for the dismissal of the indictment, the undersigned also finds no basis for an Order requiring the government to produce such witnesses, even if available, at this time.

## **SUMMARY**

In summary, the undersigned finds no violation of defendants Fifth Amendment rights resulting from any pre-indictment delay in this case.  Accordingly, the undersigned recommends that defendant's Motion to Dismiss Indictment Due to Pre-Indictment Delay or Alternatively to Compel the Government to Produce Witnesses be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable James Lawrence King, United States District Judge, within ten (10) days of receipt.  See 28 U.S.C. §636(b)(1)( c); United States v.

*Warren*, 687 F.2d 347 (11th Cir. 1982), *cert. denied*, 460 U.S. 1087 (1983); and *Hardin*

*v._Wainwright*, 678 F.2d 589 (5th Cir. Unit B 1982); *see also Thomas v. Arn.*, 474 U.S.

140 (1985), *reh. denied*, 474 U.S. 1111 (1986).


RESPECTFULLY SUBMITTED in Miami, Florida, this 10 day of July, 2008.


Ted E. Bandstra
Chief United States Magistrate Judge

Copies furnished to:

Honorable James Lawrence King
All counsel of record

ATTACHMENT A

Generated By Sector Key   11Sep2007 14:22:09

.ivity# 3054823,3054828,3054865,3054959 Case ...t15

7. 111016Z SEP 07: CBP RPTS THEY HAVE A CITATION ENR RELIEF OF C-130. ETA APPROX 15-20MINUTES. CALL SIGN OMAHA 54X.

W. 111017Z SEP 07: NTFD C-130 OF RELIEF A/C.

X. 111019Z SEP 07: SKW OU ATTEMPTED TO CONTACT CBP MARINE WITH NO JOY.

Y. 111020Z SEP 07: CGC SAWFISH RPTS ETA TO GO FAST IS APPROX 4 MINUTES.

Z. 111021Z SEP 07: CBP HOMESTEAD NTFD CBP MARINE UNIT OUT OF KEY LARGO ABOUT GO FAST. THEY ARE ATTEMPTING TO GET A CREW TOGETHER...UNKNOWN AT THIS TIME IF THEY WILL BE ABLE TO GET U/W OR NOT. CBP HOMESTEAD WILL NTFD SKW IF THEY DO GET UNDERWAY.

AA. 111024Z SEP 07: TO: BRFD//RGR.

AB. 111031Z SEP 07: 1708 RPTS THEIR ARE APPROX 20MIGRANTS. VSL IS A 30' CENTER CONSOLE BLACK HULL WITH TWIN OUTBOARDS.

AC. 111034Z SEP 07: CGC SAWFISH RPTS THEY ARE CURRENTLY TRANSFERRING MIGRANTS DUE TO GO FAST TAKING ON WATER. VSL WAS STOPPED IN POSN 2450N 08000W.

AD. 111036Z SEP 07: SKW OU NTFD SKW CMD.

AE. 111042Z SEP 07: 1708 RPTS THEY ARE RTB FOR FUEL ATT. RPTS SAWFISH HAS 26 PERSONS ON BOARD. STILL TRYING TO DETERMINE WHO MIGRANTS AND SMUGGLERS ARE.

AF. 111043Z SEP 07: SKW CO NTFD.

AG. 111045Z SEP 07: D7 LEDO NTFD.

AH. 111046Z SEP 07: FM: RPTS SAWFISH O/S, INTIAL RPT 24 CUMIGS 2 SUS SMUGGS. G/F IS DIW TAKING ON WATER. SAWFISH XFERING MIGS ATT. STAISL E/R.

AI. 111049Z SEP 07: STA ISLAMORADA RTB DUE TO SEA STATE.

AJ. 111049Z SEP 07: TO: BRFD//RGR.

AK. 111050Z SEP 07: SAWFISH REPORTS THEY WILL TAKE THE GO FAST IN TOW AND BRING IT IN TO KEY WEST. WATER WAS COMING OVER TRANSOM DUE TO NUMBER OF PERSONS ON BOARD. VSL IS A 30' SPECTRA WHITE/BLACK HULL WITH RED TRIM, BLACK BIMINI TOP AND TWIN 250HP YAMAHAS. CURRENTLY HAVE 26POB STILL TRYING TO SORT OUT MIGRANTS AND SMUGGLERS. VSL REGISTRATION NUMBER IS FL1395NL.

AL. 111101Z SEP 07: HC130H 1708 CG AIRSTA CLEARWATER DEPARTED SCENE

AM. 111126Z SEP 07: SAWFISH RPTS BREAKDOWN OF MIGRANTS IS 16 ADULT MALES 7 ADULT FEMALES, 1 CHILD FEMALE FOR A TOTAL OF 24 MIGRANTS.

SMUGGLER INFO: 1. DUNIESKY SOSA LAU FLID: L220-160-77-364-0 ADDRESS: 10820 SW 200 DRIVE MIAMI FL 33157 DOB: 10/04/1977. A# 088072989 ADDRESS: 10820 SW 200 DRIVE MIAMI FL 2. MISAEL MOLINA VALSQUEZ FLID: V422-540-77-413-0 ADDRESS: 10820 SW 200 DRIVE MIAMI FL 33157. DOB: 11/13/1977. A#08804508.

STATED THEY DEPARTED VILLA CLARA THIS MORNING @ 0300. STATED THE MIGRANTS DEPARTED ON A CHUG AND WERE PICKED UP BY THE GO FAST AFTER THEIR VSL STARTED TAKING ON WATER. BOTH SMUGGLERS ARE PAROLEES.

AN. 111130Z SEP 07: RAN NAMES OF SMUGGLERS WITH CBP.

AO. 111147Z SEP 07: HC130H 1708 CG AIRSTA CLEARWATER SORTIE ENDED

AP. 111215Z SEP 07: FM: RPTS VSL INTERDICT IN POSN 24-50N 080-00W, 24 CUMIGS (16 AM, 7 AF, 1 FC), 2 SUS SMUG. VSL 33 FT CC, BLACK HULL, 2 O/B, FL # FL1395NL, VSL IN TOW FFT KW. HOLE IN HULL PLUGGED, NO LONGER TAKING ON WATER.

AQ. 111227Z SEP 07: TO: !LE 110822Q:SAW INTDICT 24 CUMIGS/2 SUS SMUG 34 NM E OF ISLAMORAD, EMBRK ALL POB W/O INCID, G/F IN TOW FFT TO KW, CASE PENDS.

AR. 111241Z SEP 07: CBP NTFD. OFFICER BAUSMITH. WILL UPDATE WITH ETA FOR SMUGGLERS.

AS. 111249Z SEP 07: SECT KW CONTACTED KWPD IN REGARDS TO OWNER INFO OF GO FAST, KWPD REPORTS GO FAST REGISTERED TO ABREU YONA FROM HIALEAH, VSL IS 30 FT IN LENGTH FIBERGLASS CONSTRUCTION INBOARD ENGINE.

AT. 111259Z SEP 07: FM: RPT SMUG INFO, #1 DUNIESKY SOSA LAU FLIP: L220-160-77-364-0 ADDRESS: 10820 SW 200 DRIVE MIAMI FL 33157 DOB: 10-04-1977. A# 088072989. #2 MISAEL MOLINA VALSQUEZ FLID: V 422-540-77-413-0 ADDRESS: 10820 SW 200 DRIVE MIAMI FL 33157 DOB 11-13-1977 A# 08804508

AU. 111300Z SEP 07: NTFD DUTY ICE AGENT. WILL COORDINATE WITH CBP FOR INTERVIEWS AND PROSECUTION.

AV. 111333Z SEP 07: TO: BRFD//RGR.

AW. 111417Z SEP 07: 110929Q D7 RPTS CGC SAWFISH INTERDICTED 24 CUBAN MIGRANTS AND 2 SUSPECTED SMUGGLERS ON A DIW G/F 34 NM E OF ISLAMORADA, FL. MIGRANTS & SMUGGLERS EMBARKED ON SAWFISH MIGRANTS WILL BE TRANSFERRED TO CGC OAK. G/F IN TOW TO STA KEY WEST. V/R LT BURRUS LANT/D5 MHLS

3. PLANS AND RECOMMENDATIONS:

4. AMPLIFYING INFO:

5. SORTIE DATA: